# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MELROY JOHNSON, SR., <br><br> Defendant. | No. CR19-4065-LTS <br><br> **ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL** |

## I. INTRODUCTION

This matter is before me on a motion (Doc. 393) for judgment of acquittal or, in the alternative, a new trial by defendant Melroy Johnson, Sr. The Government has filed a resistance (Doc. 401). Oral argument is not necessary. *See* Local Rule 7(c).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Johnson was charged in a Superseding Indictment (Doc. 167) with:

- Count 1 - conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 851

- Count 2 - possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 851

- Count 3 – possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 851.[1]

---

[1] Count 2 alleged possession with intent to distribute at least 500 grams or more of methamphetamine containing 50 grams of actual (pure) methamphetamine on or about August 28, 2019, while Count 3 alleged possession with intent to distribute the same quantity of methamphetamine, or aiding and abetting the same, on or about June 6, 2019.

Doc. 167. The Superseding Indictment also contained a forfeiture allegation seeking forfeiture of $20,084 cash seized from Johnson's apartment. The case was tried to a jury beginning July 6, 2021. Doc. 358. The Government presented testimony from 11 witnesses and admitted 166 exhibits. Johnson presented testimony from one witness and admitted 19 exhibits. *See* Doc. 365-1.

The evidence established that in early 2019, Postal Inspector Ryan Brandt noticed a significant number of express mailings going from Sioux City, Iowa, to an address in Orange, California, that were paid for in cash. The packages were usually sent by Kimberly Hansen to Felton Fitzgerald. Hansen had also received packages from southern California weighing two to seven pounds. On June 6, 2019, an express mail package came through the Sioux City post office addressed to Hansen with the same distinctive handwriting that was on previous packages. Brandt and Eric Davis, a Drug Enforcement Administration (DEA) task force officer, conducted a knock-and-talk at Hansen's residence. Hansen accepted the package after which Brandt and Davis identified themselves as federal agents and asked her about the contents of the package. Hansen denied knowing what was in the package and gave Brandt consent to open it. The package contained nearly five pounds of methamphetamine. Hansen then admitted to receiving packages of drugs from Fitzgerald. Hansen allowed law enforcement to search her home and cell phone. Hansen's phone showed direct contact with Fitzgerald regarding the drug packages.[2] Hansen declined to assist officers with a controlled delivery of the package to Johnson, whom she had identified as the ultimate intended recipient of the package.

Brandt continued to monitor mailings from southern California to Sioux City. He noticed that some mailings were being sent to an address on McDonald Street. On August

---

[2] Johnson points out that while officers were present at Hansen's residence, Carol Hills, the father of Hansen's son arrived. He previously resided with Hansen at the residence and is an older black man, like Johnson. Hansen told Davis that Hills was there to "drink alcohol and mess around in the garden in the back." *See* Doc. 388 at 56. Officers did not investigate Hills to determine whether he had any involvement in the methamphetamine distribution.

2, 2019, DEA task force officers, including Davis, conducted surveillance on the delivery of one such package, addressed to Amanda Ochoa at 2129½ McDonald Street. Desiree Fredrickson accepted the package. Fredrickson and a male later identified as Shawn Hofer then traveled to an electronics business in Sioux City owned by Hofer. Fredrickson subsequently left and traveled back to McDonald Street. Johnson points out that officers did not observe Johnson near the electronics business or McDonald Street and did not observe Fredrickson or Hofer travel toward Johnson's residence on Fieldcrest Drive.

On August 28, 2019, Brandt intercepted another package addressed to Ochoa but at 2119½ McDonald Street. A K9 alerted to the odor of narcotics in the package and Brandt obtained a search warrant. The package contained two purses and a speaker inside of a smaller box. The purses contained a total of approximately 4.6 pounds of methamphetamine. The speaker box contained approximately five ounces of cocaine. The contents were repackaged and Brandt and DEA task force officers performed a controlled delivery of the package.

Brandt, dressed as a postal worker, walked up to 2119½ McDonald Street with the package and saw an unidentified Hispanic female sitting on the step outside the residence. She did not respond when he asked if he was at the correct address. He scanned the package and left it on the step. As he was leaving, Fredrickson hurried toward him and said the package belonged to her. She retrieved the package and took it to a different residence – 2123 McDonald Street.

Law enforcement obtained and executed a search warrant at 2123 McDonald Street. Hofer and another individual were at the residence and police stopped Fredrickson as she was driving away. Police found the package had been opened and the drugs removed. The bags of methamphetamine were in two different drawers of a bedroom dresser in the kitchen and the cocaine was also located in one of the dresser drawers. Officers also found marijuana, scales and other drug paraphernalia in the house.

Brandt interviewed Fredrickson. She claimed she did not know what was in the package and was retrieving it for her friend, Ochoa. Later, she stated she was picking

3

up the package for Hofer, her boyfriend, and that she did not know what Hofer was getting in exchange for receiving the package. Eventually, she told Brandt that she and Hofer were receiving packages for a black man she and Hofer referred to as "Arkansas"[3] or "Barbecue Dude." Brandt showed her a photograph of Johnson and Fredrickson identified him as the person she was talking about, but also said that all black men look alike to her. Davis interviewed Hofer, who claimed he did not know why officers were at the residence. He later agreed to cooperate when Davis confronted him with the information they had gathered in the investigation and showed him a picture of Johnson.

Davis obtained an anticipatory search warrant for Johnson's residence, which authorized a search if Johnson accepted the package. Davis obtained a warrant for an apartment at 3425 Fieldcrest Drive rather than Johnson's address at 4325 Fieldcrest Drive. While officers sought the warrant, Fredrickson and Hofer were taken to a room at the DEA office.

Officers repackaged the contents of the parcel that Fredrickson had taken into 2123 McDonald Street. The majority of methamphetamine was replaced with a non-drug, lookalike substance. Officers also gave Fredrickson and Hofer $500 to give to Johnson as payment towards a drug debt, as they typically brought Johnson some money when they visited his apartment.

On August 28, 2019, officers drove Fredrickson and Hofer to 4325 Fieldcrest for the controlled delivery. As Fredrickson and Hofer walked up, Johnson, who was standing outside on his patio, invited them inside.[4] After Fredrickson and Hofer entered the apartment and gave an indication to law enforcement that they had given the package to Johnson, law enforcement attempted to enter the apartment through the secured front

---

[3] The Government notes that Fredrickson testified that she and Hofer came up with this nickname because the phone number Johnson used had an Arkansas area code. *See* Doc. 388 at 212-13.

[4] Johnson notes that he knew the couple because, as Hofer testified, he was a customer of Hofer's business and had previously cooked barbecue for them. *See* Doc. 389 at 182, 216.

4

door. When they were unable to gain entry, they moved to the glass patio slider door, which had partially closed blinds. Todd Peterson, a Woodbury County Deputy and DEA task force member at the time, testified that he saw Johnson through the slider door and blinds standing in the kitchen with his attention on something on the counter. Officers broke the glass slider door and entered the residence. Johnson ran into the bathroom with the baggies of methamphetamine and locked the door. Agents gained access to the bathroom, arrested Johnson and seized a limited amount of methamphetamine from the area around the toilet near plastic baggies that had been ripped open. The five ounces of cocaine and $500 were on the kitchen counter. Agents also located and seized a total of $20,084 in cash, primarily from two bundles in bags, in two different bedrooms, along with $1400 in $100 bills in Johnson's wallet. Officers also found a digital scale[5] in close proximity to one of the large bundles of cash. Officers seized the cash, remaining drugs and baggies, purses, three cell phones, an iPad and a key from Johnson's residence.

Brandt and Davis interviewed Fitzgerald after he was arrested in September 2019 based on the Indictment in this case. Fitzgerald admitted he was supplying drugs to someone named "Melroy" and had conducted business over the phone[6] without ever having met "Melroy" in person.

Johnson emphasizes that one month after his arrest, Brandt began investigating another Sioux City man based on suspected packages of cash being mailed from Sioux City to California and "heavy" packages coming back to Sioux City. This individual was arrested in early November 2019, after a search of his residence revealed a large quantity

---

[5] Johnson points out that Davis previously testified that a scale was not located in the residence. He clarified on cross-examination that he did not find a scale but acknowledged there was a photograph of a scale from the residence. *See* Doc. 388 at 149-50. In any event, the scale was not taken into evidence.

[6] Johnson points out that the Government presented no forensic evidence to substantiate Fitzgerald's claim that he had conducted business with "Melroy" over the phone.

5

of methamphetamine, cash and firearms. Johnson notes Brandt did not investigate any connection between the two operations.

Hansen, Fitzgerald, Fredrickson and Hofer all testified at Johnson's trial.[7] Hansen testified that she traveled to California to pick up drugs from Fitzgerald for Johnson on five or six occasions and that Johnson went with her on the first trip. She identified Johnson in open court as the person she conspired with and was known to her as Melroy Johnson. She stated that Tammy Thorson[8] accompanied her on some of these trips and other times she went alone. Hansen testified she eventually began sending money to Fitzgerald and receiving packages of drugs for Johnson. She received $500 and crack cocaine from Johnson for every trip to California and every package received in the mail. She delivered drugs to Hofer at his business at Johnson's request or to Johnson's apartment on Fieldcrest Drive. Hansen's involvement in the conspiracy included five to six vehicle transports, six to 10 packages by mail and a total of 35 to 45 pounds of methamphetamine, plus a lesser amount of cocaine.

Fitzgerald testified that Thorson introduced him to "Melroy" over the phone in 2018 and that he began supplying "Melroy" large quantities of drugs (mostly methamphetamine) without having met "Melroy" in person. Thorson and Hansen initially traveled to California to retrieve the drugs from Fitzgerald. Later, he began sending them through the mail. Fitzgerald used false names and arranged for the Sioux City conspirators to use false names on the packages as well.

Hofer and Fredrickson testified that they were not always truthful with law enforcement. They admitted to falsely implicating Ochoa, who had no connection to the drug trafficking operation, by having her name placed on the drug packages. Hofer admitted they considered having the drug packages sent to Fredrickson's brother because

---

[7] Each of these individuals is a federal defendant and coconspirator/cooperator who has entered into a cooperation plea agreement with the Government.

[8] Ms. Thorson did not testify at trial.

6

he was "a mute" and "wouldn't be able to tell on anybody." Doc. 389 at 195. They referred to Hansen as "Fat Lady" and Hofer acknowledged that she had delivered methamphetamine to them.

Hofer first met Johnson at the end of March 2019. Johnson initially gave him approximately a gram of methamphetamine, which he and Fredrickson used. A week later, they went to Johnson's apartment and Johnson fronted them one ounce of methamphetamine. They continued to received ounce quantities of methamphetamine one or two more times and eventually received multiple ounces several times for a total of at least two pounds. In July or August 2019, they began receiving methamphetamine and sometimes cocaine by mail at Johnson's request. Both of them identified Johnson in open court as the person they conspired with to distribute methamphetamine.

Federal Defender Investigator Joseph Manser testified for the defense. He testified that his investigation revealed that Johnson had been paid tens of thousands of dollars in Social Security and Supplemental Security Income in recent years, which provided an alternative explanation for the cash in Johnson's residence. Johnson also presented evidence that Hofer engaged in numerous financial transactions over PayPal, which Johnson argued suggested that Hofer may have laundered drug money before meeting Johnson. Based on prior law enforcement experience, including in fraud cases, Manser testified that the PayPal transactions were suspicious.[9]

Johnson made an oral motion for judgment of acquittal at the close of the Government's case and renewed the motion at the close of the defense case. *See* Docs. 364, 365. I reserved ruling pursuant to Federal Rule of Criminal Procedure 29(b).

On July 9, 2021, the jury returned a verdict (Doc. 368) finding Johnson guilty on the conspiracy count (Count 1) and possession with intent to distribute methamphetamine

---

[9] On rebuttal, the Government presented testimony from one of the counterparties to Hofer's PayPal transactions, who testified that Hofer was a longtime friend and that Hofer cashed out numerous gift cards that the individual had received as a bonus from his sales job.

in relation to the August 28 package (Count 2). With regard to Count 2, it found Johnson responsible for less than 50 grams of methamphetamine mixture and five grams or more, but less than 50 grams of actual (pure) methamphetamine. The jury found Johnson not guilty of possession with intent to distribute methamphetamine in relation to the June 6 package (Count 3). The jury also returned a special verdict finding that $20,084 in cash seized from Johnson's residence should be forfeited. Doc. 371. Johnson now moves for judgment of acquittal or a new trial. Doc. 393.

### III. DISCUSSION

*A. Applicable Standards*

*1. Motion for Judgment of Acquittal*

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The Government, as the prevailing party, is entitled to have the evidence viewed in the light most favorable to it. *See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id*. Moreover, courts "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id*. (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). Additionally, courts should not reconsider the credibility of the witnesses, as that is a task for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

8

### 2. Motion for New Trial

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (internal citations omitted). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). However, the court should grant a new trial only if "the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987). "The standard for granting a motion for new trial is more lenient than for a judgment of acquittal; the court is allowed to vacate any judgment if the interests of justice so require." *United States v. Dean*, 810 F.3d 521, 532 (8th Cir. 2015) (internal citations). However, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### B. Analysis

#### 1. Motion for Judgment of Acquittal

Johnson argues the evidence was insufficient to convict him of Counts 1 and 2 based on the mixed verdict. He argues that the acquittal on Count 3 and the finding of a lesser quantity than alleged in the Indictment on Count 2 reflects that the jury rejected, at least in part, the testimony of the coconspirators/cooperators, as well as the evidence surrounding the controlled transaction at 4325 Fieldcrest Drive. He argues a reasonable jury would not have discounted the possibility that Hansen was orchestrating the Sioux City end of the conspiracy, that she used Johnson as a scapegoat and told others to do the

9

same. He emphasizes the following points regarding the Government's case that he contends supports a judgment of acquittal on Counts 1 and 2:

- Authorities had no reason to suspect Johnson prior to encountering Hansen

- Police failed to investigate Hills' possible involvement, even though he showed up at Hansen's home when the drug package was delivered and some packages were addressed to Hansen and her "family"

- Police failed to investigate any connection between Hansen and another individual in the area who had been receiving packages of methamphetamine from California at the same time

- Hansen was not arrested and could continue orchestrating the conspiracy after her initial encounter with law enforcement

- Fitzgerald never met Johnson in person, but had met Hansen and Thorson

- There was no evidence from Fitzgerald's or Johnson's phones that they had communicated with each other, but evidence showed Fitzgerald and Hansen were in direct phone contact regarding the drug packages.

- Fredrickson and Hofer had incentive to go along with Hansen's story

- Hansen had the opportunity to communicate with Fredrickson and Hofer about the conspiracy after her encounter with law enforcement

- Surveillance on August 2, 2019, showed that Fredrickson picked up a suspicious package, but it did not go to Johnson

- The August 28 package was opened at 2123 McDonald Street and all of the drugs were removed as if Fredrickson and Hofer intended to keep them

- The controlled delivery was not convincing evidence of guilt because the search warrant had the wrong address, the police sent Fredrickson and Hofer to Johnson's home, Johnson knew Hofer and Fredrickson from Hofer's business and cooking barbecue for them, the $500 was sent with Fredrickson and Hofer in an effort to make it more likely that Johnson would accept the package and the Government failed to eliminate the reasonable possibility that whatever happened in the bathroom was not because Johnson was expecting to receive drugs from Fredrickson and Hofer

- The lack of evidence of drug distribution at Johnson's residence.

Doc. 393-1 at 13-15.

The Government argues the evidence was sufficient to sustain Johnson's convictions on Counts 1 and 2. It relies on the testimony of the cooperating coconspirators, who each testified that Johnson was in agreement with them to distribute methamphetamine in the Northern District of Iowa and that they had each discussed with, observed or directly participated in the distribution of methamphetamine with Johnson or with a person tasked by Johnson to deliver drugs or collect money. It notes that law enforcement corroborated these statements with the controlled delivery of methamphetamine, an execution of a search warrant at Johnson's residence and other evidence consistent with drug trafficking by Johnson and his coconspirators.

I agree that the evidence was sufficient to support the jury's guilty verdict on Counts 1 and 2, along with the special forfeiture verdict. The Government presented testimony and documentary evidence concerning a conspiracy that involved delivery and transport of drugs and money between Sioux City and California. Each of the coconspirators identified Johnson as a member of the conspiracy. While Johnson presents several valid points that suggest some weaknesses in the Government's evidence, he emphasized many of these points to the jury during closing argument. *See* Doc. 390 at 20-51. Many of his points involve the credibility of witnesses, which the jury had the opportunity to assess and which I am not permitted to consider on a Rule 29 motion. *See Hayes*, 391 F.3d at 961.

I must view the evidence in the light most favorable to the Government and uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. Indeed, even if I find that the evidence "rationally supports two conflicting hypotheses of guilty and innocence," I must uphold the jury's verdict. *See Peters*, 462 F.3d at 957 (quoting *Serrano-Lopez*, 366 F.3d at 634). Under

11

these standards, the evidence is sufficient to support the jury's guilty verdict on Counts 1 and 2 and the special forfeiture verdict. Johnson's motion for judgment of acquittal must be denied.

### 2. *Motion for New Trial*

Johnson moves for a new trial on two grounds: (1) weight of the evidence and (2) newly discovered *Brady* evidence. I will address each argument separately.

#### a. *Weight of the Evidence*

With regard to the weight of the evidence, Rule 33 notably provides a "less restrictive standard" than Rule 29. However, to grant a new trial, the evidence must weigh so heavily against the verdict that "a miscarriage of justice may have occurred." *Rodriguez*, 812 F.2d at 417. The weight of the evidence does not meet this standard. As noted above, each of the coconspirators identified Johnson as a participant in the conspiracy and explained the extent of his involvement in the conspiracy. I found their testimony inculpating Johnson to be credible as it was detailed and specific. Some of their testimony was also corroborated by evidence of the controlled delivery and evidence obtained from the search warrant of Johnson's residence. The fact that Johnson invited Fredrickson and Hofer inside his home upon seeing them suggested that he had a more significant relationship with them than just a being a customer to Hofer's business and selling them some barbecue. Hansen's name on Johnson's apartment lease also suggested they had a close relationship. The evidence from the controlled delivery and search included Johnson being found in the locked bathroom with ripped open plastic baggies near the toilet that had held the lookalike methamphetamine substance as well as large amounts of cash in Johnson's residence. The evidence does not weigh so heavily against the verdict to indicate that a miscarriage of justice may have occurred. Johnson's motion for a new trial on this basis will be denied.

12

### b. *Newly Discovered Evidence*

With regard to newly discovered evidence and a potential *Brady* violation, Johnson argues the Government should have disclosed information related to *United States v. Gentry*, No. CR20-3025-LTS, which was also prosecuted in this court. Johnson focuses on two facts described in the affidavit to the complaint in Gentry's case: (1) that Gentry admitted to receiving numerous packages containing a large quantity of methamphetamine and (2) his alias was "Arkansas." Because Fredrickson referred to the black man to whom they delivered drugs as "Arkansas" and stated that all black men look alike to her, Johnson argues this information from Gentry's case would have further undermined the reliability of Fredrickson's identification of Johnson and provided an alternative suspect with the same nickname and a similar physical description.

The Government disagrees that information from *Gentry* constitutes new evidence or any *Brady* violation. It notes that "Arkansas" was not Johnson's alias, but the name Hofer and Fredrickson decided to use to refer to Johnson, as between themselves, based on the area code associated with Johnson's phone number. They also referred to him as "Barbecue Man." The Government notes that neither of these are known aliases for Johnson for law enforcement purposes.

In addition, the Government states that Gentry's offense conduct involved participation in a conspiracy to distribute methamphetamine in Fort Dodge and Marshalltown, Iowa, which are not in the Sioux City area. The Government adds that there is no information that Gentry had contacts with anyone associated with Johnson's case, nor in the Sioux City area in general. The Government asks that I take judicial notice of Gentry's presentence investigation report.

"A district court may grant a new trial based on newly discovered evidence 'if the interest of justice so requires.'" *United States v. Glinn*, 965 F.3d 940 (8th Cir. 2020) (quoting Fed. R. Crim. P. 33(a)). To receive a new trial based on newly discovered evidence, a defendant must show: (1) the evidence was unknown or unavailable at the time of trial; (2) defendant was duly diligent in attempting to uncover the evidence; (3)

13

the newly discovered evidence is material; and (4) the newly discovered evidence is such its emergence probably will result in an acquittal upon retrial. *See United States v. Meeks*, 742 F.3d 838, 840 (8th Cir. 2014) (citing Fed. R. Crim. P. 33(b)). The standard is "rigorous because these motions are disfavored." *United States v. Hollow Horn*, 523 F.3d 882, 889 (8th Cir. 2008) (quoting *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007)). Newly discovered evidence must be more than impeachment evidence to meet the materiality requirement. *Meeks*, 742 F.3d at 841.

"To establish a *Brady* violation, a defendant must show that the government suppressed exculpatory evidence that was material either to guilt or to punishment." *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) (citing *United States v. Ryan*, 153 F.3d 708, 711 (8th Cir. 1998)). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). "A 'reasonable probability of a different result' exists when 'the nondisclosure undermines confidence in the outcome of the trial.'" *United States v. Chappell*, 990 F.3d 673, 679 (8th Cir. 2021) (citing *United States v. Dones-Vargas*, 936 F.3d 720, 722 (8th Cir. 2019)) (internal quotations omitted).

I have taken judicial notice of the relevant documents in *United States v. Gentry*, No. CR20-3025-LTS and find they do not constitute *Brady* evidence. First, the evidence is not exculpatory, as the offense conduct is wholly separate from the evidence presented at Johnson's trial and reveals no connection. Gentry's case involved a conspiracy to distribute methamphetamine in the Fort Dodge area and utilized a different scheme. It has no overlapping participants with Johnson's conspiracy.

Second, Johnson argues the evidence would have been useful in undermining the reliability of Fredrickson's testimony given her statement that all black men look alike to her and that she knew Johnson as "Arkansas." While Johnson and Gentry are both black men, they have significantly different physical traits, most notably their age (Gentry is 33 years old while Johnson is 66 years old). Law enforcement also knew Gentry went

14

by the alias "Arkansas" while the nickname "Arkansas" was one that Fredrickson and Hofer used between themselves based on Johnson's area code.

Because information about Gentry was neither exculpatory to Johnson nor material to either guilt or punishment, it does not warrant a new trial under Rule 33(b)(1) or *Brady*. Johnson's motion for new trial on this basis will be denied.

### IV. CONCLUSION

For the reasons set forth herein, defendant's motion (Doc. No. 393) for judgment of acquittal or a new trial is **denied**.

**IT IS SO ORDERED.**

**DATED** this 28th day of September, 2021.

_____
Leonard T. Strand, Chief Judge